**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ERIC JONES,** | ) | **CASE NO. 5:05CV163** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| **JOHN E. POTTER, Postmaster General,** | ) | |
| | ) | |
| **Defendant**. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon Defendant's Motion for Summary Judgment (ECF DKT # 15), Defendant's Motion in Limine (ECF DKT #30), and Plaintiff's Cross Motion and Amended Cross Motion for Summary Judgment (ECF DKT ##33 &34). For the reasons that follow, Defendant's Motion for Summary Judgment is granted. Defendant's Motion in Limine is denied as moot. Plaintiff's Cross Motion and Amended Cross Motion for Summary Judgment are denied as untimely.

## **I. FACTUAL BACKGROUND**

Plaintiff has been employed by the United States Postal Service since 1988.  In 1990, he transferred to Akron as a mail handler.  Later, as a consequence of work-related injuries, Plaintiff developed physical restrictions and limitations with his neck and back, which prevented him from lifting eighty pounds and from standing eight hours a day.  He filed, and was allowed, workers' compensation claims and was placed on limited duty – assigned to torn mail.  This position permitted him to sit for an eight-hour shift, with minimal lifting.

On March 13, 2002, Plaintiff had an altercation in the workplace with a female employee with whom he previously had a personal and intimate relationship.  Following the altercation, both Plaintiff and the female employee were sent home.  Thereafter, on March 19, 2002, Plaintiff received a letter informing him that he had been put on emergency placement without pay.  Subsequently, on May 9, 2002, Plaintiff was issued a letter of termination.

Plaintiff pursued claims through the union grievance and Equal Employment Opportunity Commission ("EEOC") processes.  Ultimately, the union grievance process resulted in a decision by an arbitrator, dated June 26, 2003.  The arbitrator, Edward McDaniel, determined that while Plaintiff had committed an offense for which discipline was appropriate, his misconduct was not the type which permitted the application of the "emergency procedures" under the collective bargaining agreement.  According to Arbitrator McDaniel, while the behavior justified a disciplinary response, Plaintiff did walk away and demonstrated no intent to continue any contact with the co-worker.  The Arbitrator further found that management denied the Plaintiff his entitlement to written prior notice of an intent to impose any discipline and that Plaintiff's

conduct warranted no more than a suspension. Plaintiff was reinstated, effective July 9, 2003, and awarded lost pay and benefits.

On November 9, 2004, in a subsequent EEOC proceeding, an Administrative Law Judge found in favor of the Postal Service. The Administrative Law Judge found that the Postal Service articulated a legitimate, non-discriminatory reason for its actions with respect to Eric Jones – that he had violated the Postal Service's zero-tolerance policy on violence in the workplace. The decision further states that there was no evidence that prior EEO activity, race, sex and /or disability were factors in the employer's decision.

In his Complaint, Plaintiff alleges discrimination on the basis of disability, race, gender and retaliation. At the summary judgment stage, Plaintiff has abandoned the race claim and minimized the gender and retaliation claims. He continues to assert that he was discriminated against because of his EEOC complaints, his many worker's compensation claims, and his disability. He contends that he was disciplined more severely than his co-worker; and that the "no-violence-in-the-workplace" policy was a mere pretext.

## II. LAW AND ANALYSIS

**Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,*

-3-

*Inc.*, 447 U.S. 242, 248 (1986). An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.* When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.* However, in evaluating a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the non-moving party. *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F. 3d 1095, 1097-98 (6th Cir. 1994).

### *Monette* and *McDonnell Douglas* Frameworks

A plaintiff seeking relief under the Americans With Disabilities Act ("ADA"), must establish he is an individual with a disability; is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and was discharged solely by reason of his disability. *Monette v. Elec. Data Sys. Corp.*, 90 F. 3d 1173 at 1178 (6th Cir. 1996). *Monette* clarifies the burden of each party depending on whether plaintiff has direct or indirect evidence to support his claim.

If the plaintiff seeks to make his prima facie case using indirect evidence, he is bound by the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973). Under this standard, a plaintiff is required to show: (1.) He is disabled; (2.) He is otherwise qualified for the position; (3.) He suffered an adverse employment action; (4.) The employer knew or had reason to know of his disability; and (5.) After termination, the position remained open, or the disabled individual was replaced, or similarly situated employees were treated more favorably. *Monette*; *McDonnell Douglas*; *Switala v. Schwan's Sales Enterprise*, 231 F. Supp. 2d 672, 687 (N.D. Ohio 2002). The burden of establishing a prima facie case under *McDonnell Douglas* is not onerous. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 251

(1981). The purpose of this first stage of proof is to "bring the litigants and the court expeditiously and fairly to the ultimate question." *Burdine*, 450 U.S. at 253.

If the plaintiff demonstrates the five *McDonnell Douglas* factors, a mandatory inference is created that the employer intentionally discriminated based on disability. Then, the burden shifts to the defendant "to articulate a legitimate, non-retaliatory explanation for the adverse employment action" and the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257. If that burden is met, the burden of persuasion shifts back to the plaintiff, who must show that the employer's proffered reason is a pretext. *Id.* at 255-256.

**Plaintiff's Disability**

It is not disputed that Plaintiff had a diagnosed impairment at the time of the alleged discrimination; but it is contested whether that diagnosed impairment substantially limited any major life activity. Plaintiff submits his affidavit, including a history of his medical problems, starting well before 2002 and continuing well beyond that time. The majority of that testimony is irrelevant to this Court's consideration. Yet, the Court does find, by examining the material time frame, that Plaintiff, Eric Jones, creates a genuine issue of fact as to whether he is disabled, because he has an impairment that prevents or severely restricts him from doing activities that are of central importance to most people's daily lives, and the impairment is permanent or long-term. *Toyota Motor Mfg. v. Williams,* 534 U.S. 184 (2002). Plaintiff has medical evidence of pain in his neck and back. He avers that he has great difficulty performing household chores, such as cleaning, cooking and shopping. He cannot stand in one spot for long periods without

pain and cannot sit for longer than an hour.  He has diminished strength in his arms and decreased motion in his neck.  He cannot lift more than ten or twenty pounds.  He cannot operate a fork lift –  which is sometimes necessary at the post office –  nor can he drive for long periods without pain.  He has been unable to care for his young daughter and for his elderly parents.  He has difficulty sleeping.  (Affidavit of Eric Jones, ECF DKT # 22).

### **Otherwise Qualified**

Plaintiff, Eric Jones, has presented an issue for the jury as a qualified individual with a disability, meaning that he can perform the essential functions of the employment position , with or without reasonable accommodation.  The Postal Service, on the other hand, argues that Plaintiff is not qualified to be a mail handler.  A mail handler's job, according to Plaintiff's own affidavit, entails lifting fifty-to-seventy-pound bags of mail; dumping and sorting the mail; pushing or pulling heavy equipment; operating a tow motor and forklift; and loading and unloading trucks.  Plaintiff's doctors ordered that he be restricted from such activities; but he could perform the job of processing torn mail.  This position allowed him to sit; move frequently; and lift much less weight.  Plaintiff was performing that job when he was disciplined and when he was returned to work.  Thus, a jury could determine that he was qualified to perform the essential functions of a torn mail handler.

### **Adverse Action**

The next element of an employment discrimination claim is a showing of an adverse employment action, defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment."  *Hollins v. Atlantic Co.* 188 F. 3d 652, 662 (6th Cir. 1999).  A "bruised ego" or a "mere inconvenience or an alteration of job responsibilities" is not sufficient; rather,

-6-

evidence of "firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices" will suffice. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *White v. Burlington Northern & Sante Fe Ry. Co.*, 364 F. 3d 789, 797-798 (6th Cir. 2002).

Despite the Postal Service's protestations to the contrary, Plaintiff, Eric Jones, has met his burden of showing he suffered an adverse employment action.  He was removed from the postal facility on March 13, 2002.  His employer put him on emergency placement, and he was formally terminated in May of that year.  Effective July 9, 2003, the Union Grievance Arbitrator reduced Plaintiff's termination to suspension and returned him to work with back pay.  The Sixth Circuit has joined the majority of other circuits and rejects the "'ultimate employment decision' standard whereby a negative employment action is not considered an 'adverse employment action' for Title VII purposes when the decision is subsequently reversed by the employer, putting the plaintiff in the position he would have been in absent the negative action." *Smith v. City of Salem, Ohio*, 378 F. 3d 566 576 (6th Cir. 2004); *White*, 364 F. 3d 789.  Thus, although Plaintiff Eric Jones was returned to his job when the discipline was overturned, he nevertheless suffered an adverse employment action.

**Replaced or Treated Differently Than Similarly Situated Employees**

Plaintiff provides no competent evidence that the position in torn mail was left vacant or that Plaintiff was replaced; though it appears to the Court that the torn mail job was intended to accommodate those employees who are recovering from injuries and have medical restrictions.

Plaintiff asserts he was treated more harshly than other employees.  To be considered "similarly situated, the individuals with whom the plaintiff seeks to compare his/her treatment

-7-

must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment for it." *Gray v. Toshiba Am. Consumer Prods.*, 263 F. 3d 595, 599 (6th Cir. 2001).

The female co-worker, Ortiz, who was involved with Plaintiff in the altercation giving rise to discipline, was answerable to the same supervisor as Plaintiff – that is, Felton Miller. Plaintiff protests that Ortiz was given the opportunity to tell her side of the story and was permitted to return to the postal facility the next day, while he was removed and ultimately terminated. Plaintiff had the chance to relate his side of things and gave his written statement the day following the incident. (Government Exhibit "G"). However, after hearing from Plaintiff, Ortiz, and an employee-witness, Supervisor Miller determined that Ortiz was not the aggressor – that is, she was not "engaged in the same conduct" as Plaintiff. Furthermore, as the EEOC Administrative Judge noted, the "comparative employees" cited by Plaintiff as individuals who participated in workplace violence, yet were treated more favorably, "were, in fact, treated the same as the Complainant in that they were issued discipline, including notices of removal, for improper conduct." (Government Exhibit "B" at 10).

In view of the relatively light burden Plaintiff must meet at this juncture, however, the Court will find for purposes of the *McDonnell Douglas* analysis that Plaintiff has shown that his treatment was, on balance, more punitive than that imposed on the co-worker who took part in the same workplace violence.

**Legitimate Reason**

The burden, at this point, shifts to the employer merely "to articulate a legitimate, non-

-8-

retaliatory explanation for the adverse employment action". *Burdine*, 450 U.S. at 257. The United States Postal Service has a written "zero-tolerance" policy and it applies equally to purely verbal threats and intimidation.

> "This zero tolerance policy means that each and every act or threat of violence from this day forward, regardless of the people involved and/or circumstances, will elicit a prompt investigation of facts and an appropriate response to those findings. While certain behaviors can lead to discipline or removal, our emphasis is on providing a safe and healthful workplace environment." (Government Exhibit "C" - Open Letter to all Employees).

And later, in February of 2000: "Due to the seriousness of these situations, threats or assaults made directly or indirectly towards any employee or postal customer, even in jest, will not be tolerated." (Plaintiff's Exhibit #66).

By establishing the existence of this long-standing and well-disseminated policy against workplace violence, the Defendant Postal Service has met its burden of production and has succeeded in rebutting the presumption of discrimination.

**Pretext**

Plaintiff, Eric Jones, contends that the Postal Service latched upon his workplace confrontation with Ortiz as a convenient way to "get rid" of a disabled, "unproductive" employee. To demonstrate that Defendant's articulated non-discriminatory reason for the adverse employment action is mere pretext, Plaintiff must show, by a preponderance of the evidence, that "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F. 3d 1078 at 1084 (6th Cir. 1994).

Plaintiff does not deny that there was a confrontational incident on March 13, 2002 with a co-worker at the postal facility during work hours. Moreover, the zero-tolerance policy was

-9-

in effect well before, and after that date; and Plaintiff was aware of its terms. Thus, Plaintiff has available to him only the second method of showing pretext. "Under the second method, [the plaintiff] may not rely exclusively on his prima facie evidence but instead must introduce some further evidence of discrimination." *Cicero v. Borg-Warner Automotive, Inc.*, 280 F. 3d 579, 589 (6th Cir. 2002).

Plaintiff submits the affidavits of two former Postal Service employees, Kenneth J. Johnson and Geraldine Smith, who worked at the same facility and who knew Plaintiff's supervisor, Felton Miller. Johnson's affidavit at Paragraph 2 recites:

> "I asked him, 'What happened about Eric and Cynthia. You put my boy out of the building.' He said, 'It wasn't a hard decision. You've got $250,000.00 in one hand and zero on the other; so it's not a hard decision to make.' I said, 'What does that mean?'"

And at Paragraph 4: "Management at the PO often looks upon injured workers as if they are trying to "scam" the Post Office, that their injuries are not serious." This Court must discount Mr. Johnson's affidavit. In part, the affidavit is opinion, without any foundation in fact. Also, portions of it would be nonsensical to the average juror, as it is to the Court, without some interpretation provided by a third party.

In Geraldine Smith's affidavit at Paragraph 3, she avers:

> "Sometime after Eric Jones had been put out of the building on emergency placement or had been removed, I talked with Felton Miller about Eric Jones, whom I knew. Miller told me that 'He couldn't do the job. He wasn't working his job, and this (meaning the Cynthia Ortiz incident) gave him a chance to get rid on (sic) Eric Jones.' From this I inferred that the Ortiz incident was more or less 'icing on the cake.'"

Initially, any hearsay defect is eradicated because Felton Miller is a supervisor and agent of the Postal Service, and his words can be deemed admissions by a party opponent. Yet, in this Court's view, Smith's recitation of Miller's statement is an isolated, after-the-fact remark

-10-

which carries little weight towards proving a discriminatory animus. Its force is further diluted because it can be read as the employer could not terminate Plaintiff without a legal reason; and now, the violation of the zero-tolerance policy provided a legitimate reason. The Court further finds that the statement to Geraldine Smith by Felton Miller is subject to more than one reasonable interpretation. Since the evidence requires the fact-finder to apply inferences to ascertain its meaning, it is not direct, competent evidence.

At this point, the Court would note that, it is not bound to follow the decisions of the Arbitrator and the Administrative Law Judge. However, this Court will grant due deference to these independent adjudicators, who, after hearing live testimony and assessing credibility of witnesses, found that the United States Postal Service had a legal, rational basis for imposing discipline upon Eric Jones.

### III. CONCLUSION

Upon consideration of the briefs, arguments, and applicable case law, and after viewing all of the evidence in a light most favorable to the Plaintiff, Eric Jones, the Court finds that Plaintiff has not demonstrated that there is a genuine issue for trial on his claim for discrimination; and further holds that Plaintiff has failed to meet his burden of supplying direct evidence that discriminatory animus, and not an innocent, legitimate business reason, actually motivated the Postal Service's challenged conduct. Therefore, Defendant's Motion for Summary Judgment is granted.

**IT IS SO ORDERED**.

**DATE: _5/08/06_____**

/s/ Christopher A. Boyko

**CHRISTOPHER A. BOYKO**
**United States District Judge**
**(Signed original on file)**